## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| Harold Doss, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| AMBER L. PHILLIPS, in | ) |
| her official capacity as Correctional | ) |
| Program Director 2 for the | ) |
| TENNESSEE DEPARTMENT | ) |
| OF CORRECTION; AND | ) |
| JOHN DOE #1 SENTENCE | ) |
| MANAGEMENT DIRECTOR | ) |
| TENNESSEE DEPARTMENT | ) |
| OF CORRECTION, et. al., | ) |
| | ) |
| **Defendant.** | ) |

RECEIVED

MAR 1 1 2024

U.S. District Court
Middle District of TN

NO. _____

HONORABLE _____

**JURY TRIAL DEMAND**

## COMPLAINT FOR PROSPECTIVE INJUNCTIVE RELIEF

### INTRODUCTION

1. This is a civil rights action filed by Harold Doss, pro se, for injunctive and declaratory relief from Defendant's violations of Plaintiff's constitutional rights secured under the Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause, and Article I, Section 9, Clause 3, Ex Post Facto clause of the United States Constitution, via 42 U.S.C. § 1983 et seq., against Amber Phillips, in her official capacity as Tennessee Department of Correction (TDOC) Correctional Program Director 2.

2. Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes" causes deliberate indifference in the calculation

1

procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional Ex Post Facto rights secured under Article I, Section 9, Clause 3, of the United States Constitution;

3. Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes" causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional "Substantive Due Process" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution;

4. Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes" causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's constitutional "Equal Protection" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution;

5. Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes" causes deliberate indifference in the calculation procedures method, as applied to Plaintiff, in violation of the Plaintiff's "prohibition against cruel and unusual punishment" rights secured under the Eighth Amendment of the United States Constitution.

6. Specifically, Plaintiff alleges a claim that "Tennessee's life sentence statutes" are unconstitutionally vague, as applied to Plaintiff, and violates the Plaintiff's constitutional right to the appointment of counsel secured under the Sixth Amendment of the United States Constitution. Specifically, Plaintiff alleges a claim that Defendant's arbitrary interpretation of "Tennessee's vague life sentence statutes" causes deliberate indifference in the calculation procedures method,

2

as applied to Plaintiff, in violation of the Plaintiff's "prohibition against cruel and unusual punishment" rights secured under the Eighth Amendment of the United States Constitution.

7. Specifically, Plaintiff alleges a claim that "Tennessee's life sentence statutes" are unconstitutionally vague, as applied to Plaintiff, and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause of the Fourteenth Amendment, and Article I, Section 9, Clause 3 Ex Post Facto clause of the United States Constitution.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's constitutional civil rights claims as invoked pursuant to 28 U.S.C. 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

9. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, since a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee and because Defendant, in her official capacity resides in and/or regularly conducts business within this judicial district, and thus, is subject to personal jurisdiction within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under this 1983 complaint exhaustion is not a requirement.

## PARTIES

10. Defendant Amber Phillips is the Correctional Program Director 2 for the Tennessee Department of Correction, and within her office has broad responsibility for calculating sentences

3

for TDOC prisoners and setting and overseeing those sentence calculations. Defendant Phillips is sued in her official capacity only.

11. Plaintiff, Harold Doss, is an adult resident of the State of Tennessee and is currently incarcerated at the Riverbend Maximum Security Institution (TDOC ID 421315), serving a life sentence.

12. Plaintiff, Harold Doss, understands that there is no Sentence Management Director at this time and John Doe represents such and Plaintiff reserves the right to add Defendants as they become known to Plaintiff.

## LEGAL STANDARD

13. Pursuant to 42 U.S.C. § 1983, every person "who under color of any statute, ordinance regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

14. The Eighth Amendment to the United States Constitution states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

15. The Sixth Amendment to the United States Constitution states that one charged with a criminal offense shall have the appointment of counsel.

4

16. The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

17. The Ex Post Facto clause rights secured under Article I, Section 9, Clause 3, of the United States Constitution forbids the federal government and states from passing laws that impose or increase criminal liability or punishment retroactively.

18. The Equal Protection Clause, rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution, states that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

19. Plaintiff alleges his cruel and unusual punishment arises out of Defendant Phillips' arbitrary interpretation of Tennessee's unconstitutionally vague life sentence statutes and calculation procedures method, as applied to Plaintiff, violates Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Fourteenth Amendment Equal Protection and Due Process (substantive) Clause of the Fourteenth Amendment, and Article I, Section 9, Clause 3 Ex Post Facto clause of the United States Constitution.

20. Plaintiff alleges that Defendant Phillips' arbitrary interpretation of Tennessee's unconstitutionally vague life sentence statutes, as applied to Plaintiff, is unconstitutional in violation of Plaintiff's "Equal Protection" rights secured under the Fourteenth Amendment, Section 1 Clause of the United States Constitution.

## STATEMENT OF FACTS

21. Defendant Phillips, as Correctional Program Director 2, has the responsibility of calculating sentences of those convicted of a crime, T.C.A. § 40-28-129, which states:

> "Not withstanding any other provision of the law to the contrary, the department of correction shall be responsible for calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction and any felony offender sentenced to confinement in a county jail or workhouse for one (1) or more years."

(Also see *Shorts v. Bartholomew*, 278 S.W.2d 26, 278).

22. Defendant Phillips, in her career, has submitted numerous sworn affidavits in court and answered voluminous requests (CR-3118) (RDA 1167) detailing her sentence calculation procedures method. This includes life sentences.

23. Plaintiff is Harold Doss, conviction offense date of March 19, 2012, and the court imposed a life sentence under the Sentence Reform Act of 1989.

## HISTORY OF THE LIFE SENTENCE AMENDMENTS

### The Sentence Reform Act of 1989

24. In the Sentence Reform Act of 1989, the Legislature changed the conviction class of first degree murder from Class X to a class of its own. See T.C.A. § 39-13-202 et. seq., "first-degree murder" statute which defined first degree murder and sentencing.

25. The Legislature further enacted T.C.A. § 40-35-101, "Short Title." This statute lists the sentence ranges and release eligibility for all felony classifications **except** for first-degree murder[1] but has been applied to first-degree murder. The statute reads:

> **NOTE:** First Degree Murder **excluded** from classification of <u>sentencing process</u> and sentencing solely according to first degree murder statute.

---

[1] See exhibit (1) Sentencing Grid.

6

26. See also T.C.A. § 39-11-117, which states:

> (a)(1) For the purpose of classification of other offenses, first degree murder is one (1) class above Class A.
>
> (3)(b) For the **sole and exclusive purpose** of determining the classification of prior offenses under sentencing guidelines, first degree murder is considered a Class A offense.

27. This new law, "T.C.A. § 40-35-101, "Short Title," classified all felonies according to their seriousness and a sentencing grid divided these classifications into ranges depending upon the number of prior convictions. It further implemented enhancing and mitigating factors. This statute was specific in its lists of <u>sentence **ranges**, **parole** eligibility</u> and **release expiration** for all felony classifications *except* for *first-degree* murder. The concept "RED" as applied to these classifications does not pertain to the sentencing of first degree murder and cannot be cumulatively applied as Defendant's calculation procedure method applies it.

28. Tennessee also within the Sentencing Reform Act of 1989 enacted T.C.A. § 40-35-501(a)(2), which states:

> "Except for inmates who receive sentences of imprisonment for life without the possibility of parole, only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than two (2) years shall be eligible for parole consideration."

29. In 1993, the Legislature amended T.C.A. § 39-13-201 et seq., to include life without the possibility of parole and the twenty-five (25) year parole eligibility requirement.

30. In 1993, the General Assembly <u>amended</u> T.C.A. § 39-13-204 **requiring** a jury be instructed of the twenty-five (25) calendar year minimum before being released on parole.

> (a) Upon a trial for first degree murder, ...
>
> (e)(2) ... The **jury shall be instructed** that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least **twenty-five (25)**

7

**full calendar years of the sentence**. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for release on parole.

31. Further, in 1993, the General Assembly amended T.C.A. § 40-35-501 (h)(1) to coincide with T.C.A. § 39-13-204 resulting in first-degree murder being required to serve a minimum of twenty-five (25) calendar years and/or life without.

> "(h)(1) Release eligibility for each defendant receiving a life sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty (60) years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be **eligible for parole** until the defendant has served a minimum of twenty-five (25) **full calendar years...**" (Emphasis added)

32. Then, in 1995, the General Assembly enacted a bill[2] that required certain crimes to serve 85% of the sentence imposed by the court. T.C.A. § 40-35-501 (i)(2)(a) stated:

> "(i)(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the **sentence imposed** by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)." (Emphasis added)

33. To complicate the statutes further the General Assembly, in 2020, amended and enacted a **CLARIFICATION** bill[3] (*Public Chapter 765 House Bill No. 394*) that defined a life sentence at 60 years for anyone convicted of first-degree murder from July 1, 1995 to present. T.C.A. § 40-35-501 (h)(2) states:

> "(H)(2) There shall be no release eligibility for a person committing first degree murder, **on or after July 1, 1995,** receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty years less sentence credits earned and retained.

---

[2] See exhibit (2) 1995 bill enacted by the General Assembly.
[3] See exhibit (3) Clarification bill submitted in General Assembly and enacted in 2020 (Pub. Acts, ch. 756, § 1).

However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law, shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)."
**(Emphasis added)**

34. No person of common intelligence would believe that the 1995 and 2020 clarification amendment, as stated above, have the same meaning and penalties.

35. Former Tennessee Code Annotated § 40-35-501(i)(2)(a) was unclear as to whether it imposed a sentence greater than twenty-five (25) years imposed under T.C.A. § 39-13-204, or T.C.A. § 40-35-501(h)(1). Nor was T.C.A. § 39-13-204 amended to coincide with either of these amendments or even the 2020 amendment T.C.A. § 40-35-501(h)(2).

36. First, the 1995 bill did not define a life sentence and it was never defined until the General Assembly enacted what they called a clarification bill in 2020. Therefore, those sentenced to a life sentence between 1995 and 2020 cannot be calculated in accordance with the 2020 law because it violates Plaintiff's Ex Post Facto rights.

37. Second, the General Assembly in 2020 was not the General Assembly in 1995 and cannot go back some 25 years and attempt to interpret and define the intent of those statutes. This in itself voids the statute.

38. Article II, Section 17 of the Tennessee Constitution provides in relevant part that "[a]ll acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived, or amended." Statutes that fail to meet the requirements of Article II, Section 17 will be struck down as invalid.

39. Even more, in 1993 the General Assembly enacted T.C.A. § 39-13-204 REQUIRING the Defendant and the jury in a first-degree murder **trial** be informed of the 25-year minimum before being eligible for parole. This law remained in effect until 2021 and the twenty-five (25) year calculation method must be statutorily applied to Plaintiff, as this calculation method was

9

statutorily REQUIRED to all **life without** parole trials until 2021. This liberty interest applies to Plaintiff and is protected by the United States Constitution under Substantive Due Process, Equal Protection of the Law, Ex Post Facto and prohibition against cruel and unusual punishment.

40. A defendant charged with first degree murder has a claimable statutory[4] and constitutional substantive due process, right to know the punishment, and have the jury know the range of punishment applicable to the charges before deciding guilt or innocence.

41. To impose a sentence on a defendant, then have that sentence recalculated twenty-five (25) years later[5] to a punishment greater than that mandated by statute, is not only prejudice to the judicial process, but violates the Plaintiff's substantial right of due process, right to be free from cruel and unusual punishment, right to equal protection of the law and Ex Post Facto clause rights secured under the United States Constitution.

42. The Tennessee Attorney General[6], who is not the General Assembly, held that "pursuant to T.C.A. § 40-35-501(h)(1) and the 1995 amendment T.C.A. § 40-35-501(i)(2)(a) provides that there shall be no release eligibility for a person sentenced to life imprisonment, the two provisions clearly conflict...", *Tenn. Op. Atty. Gen.* No. 97-098 1997 WL 449672 (Tenn. A.G., July 1, 1997).

43. The Tennessee Attorney General analogy held that "pursuant to (h)(1), and (i)(2)(a) the two provisions clearly conflict. This may have been true if the legislature had amended T.C.A. § 40-35-501 (i)(2)(a) and T.C.A. § 39-13-204 to coincide with each other but they did not. See *State v. Golden*[7] opined:

> Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.

---

[4] See exhibit (4) Former T.C.A. § 39-13-204.
[5] See exhibit (5) Chancery Court order requiring calculation.
[6] See exhibit (6) Attorney General Memo form 1997.
[7] State of Tennessee v. Charles Golden (**1998 WL 518071**)

> It immediately becomes apparent that the legislature in 1995
> overlooked amending Tennessee Code Annotated § 39-13-204 to
> coincide with the 1995 amendment to Tennessee Code Annotated
> § 40-35-501. (Emphasis added). *State v. Golden* No. 02C01-9709-CR-
> 00362, 1998 WL 518071 at *7-*8 (Tenn. Ct. Crim. App. 1998):

44. The Criminal Court of Appeals, as stated above, opined that the General Assembly did not properly amend T.C.A. § 39-13-204 to coincide with the 1995 statute but refused to opine concerning the constitutionality of the statute. Such arbitrary results are problematic, especially when the General Assembly not only fails to amend its statutes, but creates vague and ambiguous statutes.

45. The failure to provide fair notice, especially where such a severe restriction on individual liberty is mandated, means that the court should not interpret a vague statute as to increase the penalty when such an interpretation can be no more than a guess as to what the General Assembly intended. This is supported by the fact that the General Assembly, twenty-five (25) years later, enacted the clarification bill, **Public Chapter 765 House Bill No. 394,** and a year later attempts to amend the other conflicting statutes such as T.C.A. § 39-13-204.

46. Ironically, T.C.A. § 39-13-204, as amended today, clearly states that a person convicted of first degree murder must serve 51 years before being eligible for parole. The Tennessee Supreme Court in *Cyntoia Brown v. Carolyn Jordan* M2018-01415-SC-R23-CO (Tenn. 2018) stated that the 51 years defined under T.C.A. § 39-13-204 was the **PAROLE ELIGIBILITY DATE.** This totally contradicts T.C.A. § 40-35-501(h)(2) that was passed in 2020. What is going on in Tennessee? It is apparent that the statutes concerning a life sentence in Tennessee have become so convoluted that no one knows what the criminal penalty for a life sentence in Tennessee is.

47. The Tennessee court's authority over punishment for crime ends with the adjudication of constitutionality. See, *State v. Atkins* 725 S.W.2d 660, 664 (Tenn. 1987). The courts have been

repeatedly amending legislation under the guise of crafting solutions to **fill statutory voids**, but they have only increased the confusion and complicated the statutes.

48. The statutes prescribing and defining available punishment both confer and **limit** the jurisdiction of trial courts to impose sentences for criminal offenses. Moreover, we must presume that the Legislature knows of its prior enactments and knows the existing state of the law at the time it passes legislation.

49. T.C.A. § 39-13-204 was never properly amended until 2021.[8]

50. The Attorney General's office knew that T.C.A. § 40-35-501(i)(2)(a) was in conflict[9] with T.C.A. § 39-13-204 and T.C.A. § 40-35-501(h)(1) but failed to uphold the constitution. These void, vague and ambiguous statutes could have been resolved 27 years ago, with little consequences, but everyone continued business as usual and now it affects thousands.

51. Then, twenty-three (23) years after the 1995 Amendment, the Tennessee Supreme Court in *Brown v. Jordan* 563 S.W.3d. at 200, disagreed and held that there was not a conflict. The court held that (h)(1) was for pre-1995 sentences. This analogy is unconstitutional because T.C.A. § 40-35-501 (h)(1) and T.C.A. § 39-13-204 has never been repealed and Tennessee Code Annotated § 40-35-501 (i)(l) is unclear as to whether it imposed a sentence greater than twenty-five (25) years calculation method under T.C.A. § 39-13-204, nor was T.C.A. § 39-13-204 amended to coincide with this 2020 amendment until 2021.

52. Ironically, in *Perry v. TDOC* 2022 WL 17420477, the Petitioner was arguing that the calculation of his life sentence was incorrect under T.C.A. § 39-13-204(e)(2), § 40-35-501(h)(1); § 40-35-501(i)(2)(a). The court denied relief quoting *Brown*.[10] Even more, as part of its decision

---

[8] See exhibit (7) Tenn. Pub. Ch. 528 amending T.C.A. 39-13-204.
[9] See exhibit (6) Attorney General Memo form 1997 stating the conflict.
[10] Brown v. Jordan, 2018 WL6381171.

the court stated: Section 39-13-204 (e)(2) **MERELY** states how a **jury is to be instructed** in a case involving a life sentence. *("Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision.")*

53. The court stated § 40-35-501(i)(2)(a) was **repealed in 2022** and now includes the following subsection that would apply to Petitioner's 1999 jury conviction: [**Ex Post Facto**]

> "(H)(2) There shall be no release eligibility for a person committing first degree murder, **on or after July 1, 1995**, receiving a sentence of imprisonment for life. The person shall serve one hundred percent (100%) of sixty years less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the **sentence imposed by the court** by more than fifteen percent (15%)." (**Emphasis added**)

54. This is a clear constitutional violation of Ex Post Facto.

55. T.C.A. § 39-13-204(e)(2), under substantive due process, is the specific statute provision that takes precedence over the other statutes because until you are legally sentenced as required by the twenty-five (25) year calculation method under § 39-13-204(e)(2) the other "calculation" statutes, §40-35-501(i)(2)(a), are without effect. There is not a sentence to calculate. Even more, without the sentencing jury charge given denies a defendant substantive due process, a fair trial and right to trial by jury, not by Judge and Attorney General.

56. In *Tate v. Tennessee Department of Correction*[11] the court stated that state law requires the inmate to serve 25 years to be eligible for parole but **leaves out the total time** other than to serve **60% of 60 years, which is 36 years**. (Rule of Lenity)

57. Even more, in *Taylor*, the Court states: "In addition, the judgment shows that Appellant's conviction offense was a class (A) felony, when in fact first degree murder was a Class X felony at the time of the offense in this case. See T.C.A. § 39-2-202(c) (Supp. 1987). Finally,

---

[11] Tate v. Tennessee Department of Correction 2017 WL 3741348.

we note that the Appellant's conviction for first degree murder should have resulted in a life sentence with **release eligibility** on that life sentence **after service of thirty years** pursuant to Tennessee Code Annotated section 40-35-501(f) (Supp. 1987), rather than a sentence of sixty years with a release eligibility of sixty percent, or thirty-six years, under Tennessee Code Annotated section 40-35-501(g) (Supp. 1989), which also did not become effective until November 1, 1989. The Appellant's **judgment of conviction shows only that he received a life sentence but does not provide any details as to the length of time he would have to serve prior to becoming eligible for parole**." See, *Taylor v. State*, 2013 WL2145776, p.5 (Tenn. Crim. App. May 15, 2013). (Release and Parole are different.)

58. Amber Phillips is the Correctional Program Director 2 for the Tennessee Department of Correction, and within her office has broad responsibility for calculating sentences for TDOC prisoners and setting and overseeing those sentence calculations.

59. Amber Phillips submitted an affidavit[12] in the case of *JY Sepulveda*, No. 19-517-III, testifying that her interpretation of a life sentence conviction with a date of offense on or after November 1, 1989, is:

> 5. The Release Eligibility Date (RED) is the calculated release date for parole/probation, based on the percentage of time to serve as ordered by the sentencing court. **This may or may not be the same as the sentence expiration date**, depending on if the offense has parole eligibility.

> 10. ..., this sentence is calculating with a release eligibility date set at 36 years, which is **60% of 60 years with no expiration date** if imposed under the Sentence Reform Act of 1989.

---

[12] See exhibit (8) Affidavit of Amber Phillips.

60. The court's memorandum and final order relied upon the affidavit of Amber Phillips, at page three footnote (1), in **establishing** the result of the 60% of 60 years or thirty-six (36) years determines **when parole is considered**.

61. Even more, in *Howard v. Tennessee Department of Correction*,[13] Candice Whisman, Director of Sentence Management, set out in detail the TDOC's calculation of sentence reduction credits and release eligibility date. Whisman stated that the twenty-five (25) year sentence was to be served consecutive to the life sentence and that Howard's sentence reduction credits could not be applied to the twenty-five year sentence until the **life sentence expired**. A multitude of prisoners have their sentence credits applied to a sentence consecutive to a life sentence, but Sentence Management Service has not reflected an expiration date on a life sentence until this year based upon Atkins' declaratory relief request. However, this only applied to post-1995 life sentences. This fact, in itself, proves the life sentence statute is ambiguous, vague and arbitrarily applied.

62. Ironically, for over 40-plus years, TDOC, Office of the Attorney General, and the courts have arbitrarily and repeatedly determined that a life sentence does not expire. Now, everyone, including the Federal Courts, has determined that **certain** life sentences do expire.

63. Imprecision and indeterminacy are inappropriate in the application of a criminal sentencing statute. Such inconsistent results undermine "sentencing", especially where vague statute provides for the basis of a very substantial sentence. The myriad of conflicting interpretations and arbitrary decisions within the courts demands lenity, which embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should. This is supported by the fact that the General Assembly, twenty-five years later, enacted

---

[13] Howard v. Tennessee Department of Correction 2016 WL 7048838 (*2)

the **clarification** bill, *Public Chapter 765 House Bill No. 394*, and a year later properly amended the other conflicting statutes.

64. The court's authority over punishment for crime ends with the adjudication of constitutionality. See, *State v. Atkins* 725 S.W.2d 660, 664 (Tenn. 1987). The myriad of conflicting interpretations and arbitrary decisions supports the rule of lenity—fair notice and separation of powers—are heightened where, as here, a severe sentence results from a vague statute.

65. In furtherance thereof, Judges, the Attorney General's office, and lawyers have known for almost 30 years that the 1995 law concerning first degree murder was vague, in conflict, and not properly amended by the General Assembly. Ironically, everyone has continued business as usual and continued to imprison defendants, without fair notice, to a penalty of a life sentence tied to a single factual determination, a determination that turns on silent words of an imprecisely vague phrased statute.

66. Furthermore, the jury pattern instruction T.P.I.-Crim. 7.04(a) & 7.04(b)[14] was changed by a committee prior to legislative enactment in 2021. Sadly, the committee acknowledged the fact that the twenty-five (25) year minimum was **required** by law, but **THEY** felt was not proper law[15]. It was the law and **no committee, judge, or attorney** can alter or substitute this statute law for those charged with a crime.

67. Judges, members of the Office of the Attorney General and lawyers have held numerous conferences since the 1995 amendment, and during a conference the committee decided to change the jury pattern instructions in relation to a life sentence. Within these conferences, all those in attendance not only acknowledged that the 25-year minimum is required by law, but those

---

[14] See Exhibit (9) T.P.I. Crim. 7.04.
[15] See Exhibit (9) footnote (2).

in attendance also felt it was not a correct statement of the law. It was the law until 2021 when it was amended and changed by the Tennessee General Assembly.

68. This committee, who were not legislatures, could not change or substitute T.C.A. § 39-13-204 for T.P.I.-Crim. 7.04(a) & 7.04(b), no matter how they felt. This was illegal and violated the Constitutional Rights of every defendant tried for first-degree murder from 1995-2021.

69. Even more, some members of this committee were attorneys who are supposed to be appointed to protect the constitutional rights of defendants charged with a crime. These attorneys assisted in changing the jury pattern instruction, which was not law, and refused to protect the constitutional rights of their clients once they became appointed because they were well aware that T.C.A. § 39-13-204 REQUIRED that the jury be informed. This is not the Sixth Amendment appointment of counsel envisioned by the Constitution of the United Sates. This has nothing to do with ineffective assistance of counsel because once counsel participates with the state in violating a defendant's constitutional rights before the appointment stage, then the appointment of counsel is negated and a defendant is now being appointed a state mediator, not counsel. This is in violation of the Sixth Amendment to the United States Constitution.

70. The initiation of judicial criminal proceedings marks the commencement of the criminal prosecution to which alone the explicit guarantee of the Sixth Amendment is applicable and compliance with this constitutional mandate is an essential jurisdictional prerequisite to the deprivation of life or liberty.

71. The constitution imposes a responsibility upon this court to exercise its judgment to nullify any state law if its application **shocks the conscience**, offends a sense of justice or runs counter to the decencies of civilized conduct, as Plaintiff has established in this complaint.

72. Then, 24 years after the 1995 Amendment, due to the controversy and confusion between the Tennessee Courts and the Sixth Circuit concerning T.C.A. § 40-35-501(h)(1) and (i)(2)(A), the Tennessee House and Senate **passed Public Chapter 765 House Bill No. 394** attempting to "**CLARIFY**" the murder statute. This amendment violates the Ex Post Facto Clause by taking a twenty-five-year-old statute, changing the meaning and punishment for offenders that were sentenced from November 1, 1989 to July 1, 2020.

73. A bill presented by the General Assembly attempting to clarify the thirty (30) year old statute leaves no doubt that the statutes are vague, debatable and in conflict with other statutes. A version of that bill (HB 394/SB 453) was ultimately approved effective July 15, 2020, as Public Chapter 765.

74. Parole eligibility date and sentence expiration dates have very clear meanings under Tennessee law. See, for example, T.C.A. § 41-21-236 discussing sentence expiration dates and parole dates.

75. The term *Release Eligibility Date* concept actually originated in the Class X felony law of 1979, which had a similar provision called "release classification status" which occurred after serving the entire sentence of a Class X felony. Under this earlier law, the RSC date or "RED" determined when a defendant would first become eligible for rehabilitative programs such as work release, parole, furlough, and other programs. Upon hitting the RED, the person would become eligible for release.

76. The same analysis does not apply to any of the other statutes enumerated in the 1995 amendments except for murder in the first degree. The term "release eligibility date" is very specific as to *all crimes* **except murder in the first degree** as it relates to the grading of the offenses, such as standard offender, mitigated offender, career offender and the like. There can be

no doubt that the legislature intended to remove release eligibility for all of these enumerated offenses, but it is vague as to murder in the first degree. See also the comments to T.C.A. § 39-11-117, providing that first-degree murder is not punished according to the sentencing structure contained in T.C.A. § 40-35-105. See also T.C.A. § 40-35-501(a)(1) providing that an "inmate shall not be eligible for parole until reaching the inmate's release eligibility date…"

77. T.C.A. § 39-11-117 creates a liberty interest to the terms of "parole" and RED because first degree murder has always fallen outside the sentencing structure of the 1989 law and **cannot now be applied cumulatively**.

78. The General Assembly, in 1995, not only amended § 40-35-301(i)(2) to include murder in the first degree, but added several other crimes that are specifically defined to sentencing under T.C.A. § 40-35-101 et. seq. See the comments to T.C.A. § 39-11-117, providing that first-degree murder is not punished according to the sentencing structure contained in T.C.A. § 40-35-105.

79. There is extreme ambiguity in the construction of the life sentence. Notice that T.C.A. § 40-35-501(h)(1) specifies that an individual will be subject to release eligibility at 60% of 60 years or **36 years**, less credits earned. If the 1995 legislative enactments did away with release eligibility as it applied to the other offenses that in no way specifically amended the subsequent language in T.C.A. § 40-35-501(h)(1) or T.C.A. § 39-13-204, then a person sentenced to life would become eligible for parole when the individual has served a minimum of 25 full calendar years of the sentence.

80. Even more, the General Assembly moved first-degree murder from T.C.A. § 40-35-501(i)(2)(a), in 2020, as the other offenses relate to the grading offense sentencing structure contained in T.C.A. § 40-35-105, such as standard offender, mitigated offender, career offender and the like and could not be applied cumulatively to first-degree murder.

81. The General Assembly, in its wisdom, certainly has the right and power to direct the judicial process in setting of punishment in a criminal offense resulting from a conviction of life or life without the possibility of parole. The powers to define what shall constitute a criminal offense and to assess punishment for a particular crime is vested in the legislation. This function is a legislative function and not the Court, Attorneys, Sentence Management Services, or other inmates.

82. Tennessee's criminal sentencing scheme concerning the 1995 life sentence statutes are so complicated that even the Tennessee courts, the Tennessee Attorney General, Legislature, Attorneys, and Defendant's proceeding to trial did not fully understand the statutes and sentence calculations. The statutes have become so arbitrary that defendants have been denied the right to understand the charges against them, denied due process, denied the opportunity to plea due to inaccurate information in violation of the U.S. Constitution. See (ANALYSIS) *Maine v. State 2005* WL 1996631; and *Penley v. State* 2004 WL2439287, at *3, No. E2004-00129-CCA-R3-PC (Tenn. Crim. App., November 1, 2004).

83. This *clarification* (bill) law of 2020, as applied to Plaintiffs, is unconstitutional and violates Plaintiffs' rights secured under the Ex Post Facto clause and the Fourteenth Amendment of the United States Constitution and denies the Plaintiff his statutory and constitutional right to fair notice of the punishment applicable but to have the jury know the range of punishment before deciding guilt or innocence.

84. Even more apparent, if you look at the Fiscal Memorandum pertaining to the clarification bill (**HB 394 – SB 453**), dated January 23, 2020[16], under title Assumptions for the bill

---

[16] See exhibit (10) Fiscal Memorandum.

as amended: bullet number four (4), it reveals that the General Assembly is following the laws dictated by the courts and not the General Assembly. Bullet number four (4) states:

> In *Cyntoia Brown v. Carolyn Jordan* M2018-01415-SC-R23-CO (Tenn. 2018), **the Tennessee Supreme Court concluded** that an individual sentenced to life in prison under Tenn. Code. Ann. § 39-13-202(c)(3) receives a determinate 60-year sentence that may be reduced by up to 15 percent with eligible sentence credits.
> (This was 22 years after the conviction of Plaintiff.)

85. The clarification bill (**HB 394 – SB 453**) was enacted based upon the opinion of the Tennessee Supreme Court decision and not the General Assembly who enacted the statute in 1995. The court's authority over punishment for crime ends with the adjudication of constitutionality[17] and fair notice of the penalties proscribed by a criminal sentencing statute is essential, especially where such a severe restriction on individual liberty is mandated.

86. Even more conflicting is the fact that Tennessee Code Annotated § 39-13-202(c) provides for three possible sentences for a first degree murder conviction: death, life imprisonment without the possibility of parole, or life with parole. The state must file a notice of intent to seek the death penalty or life without the possibility of parole.

87. The State did not seek the death penalty or life without the possibility of parole, and if the defendant is subsequently convicted of first-degree murder, "the defendant shall be sentenced to imprisonment for life with parole by the court." The life sentences pursuant to § 40-35-501(i)(2)(a) is "life without parole" and the State has not filed the notice of intent to seek life without parole. Thereby, Plaintiff's life sentence is unconstitutional and unenforceable.

88. Former T.C.A. § 40-35-501(h)(2) stated: "[t]here shall be no release eligibility for a defendant receiving a sentence of imprisonment for life **without the possibility of parole** for first degree murder." Former T.C.A. § 40-35-501(i)(2)(a) stated the **exact same language** for first

---

[17] See, *State v. Atkins* 725 S.W.2d 660, 664 (Tenn. 1987).

degree murder except adding an additional sentence stating, "[t]he per... shall serve one hundred percent (100%) of the sentence imposed." **Both are life without parole**.

89. Tennessee federal and state courts have relentlessly addressed the issue concerning life sentences imposed under the 1995 amendment to the Sentencing Reform Act of 1989 and have repeatedly concluded that it is **life without parole** eligibility.

> In the later situation, subsection (i)(l) provides the means for **determining the sentence expiration date**, and **release is not contingent upon a grant of parole**. See also; *State v. Self*, No. E2014-02466-CCA-R3-CD, 206 WL 4542412, p. 62 (Tenn. Crim. App., November 1, 2016). And (*Pinchon v. Washburn* 2020 WL 5250668 at *4) (**Tennessee statute nominally distinguishes between life and life without**.).

90. To further complicate the statutes, the Tennessee Supreme Court in *Booker*,[18] the court in a split decision agreed that the 1995 amendment was unconstitutional, but applied relief by crafting a solution to **move all juveniles** to the T.C.A. § 40-35-501(h)(1) statute. However, even this was unconstitutional. See, dissenting opinion of Justice Roger A. Page and Justice Jeffery S. Bivins arguing such a ruling oversteps the authority of the court.

91. The court's authority over punishment for crime ends with the adjudication of constitutionality. The myriad of conflicting interpretations and arbitrary decisions supports the rule of lenity—fair notice and separation of powers—are heightened where, as here, a severe sentence results from a vague statute.

92. The government may not "retroactively increase the punishment for criminal acts." *Collins*, 497 U.S. at 43. It is well settled that this prohibition covers more than express changes of the particular statutory sentences associated with an offense. See *Pough* 569 U.S. at 539 (noting that the Supreme Court has never accepted the proposition that a new law must increase the

---

[18] See, State v. Booker 2022 WL 17073278.

maximum sentence for which a defendant is eligible in order to violate the Ex Post Facto Clause.) It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. Lenity embodies the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.

93. No cognizable harm results from stopping unconstitutional conduct, so it is always in the public interest to prevent the violation of a party's constitutional rights. See *Vitolo, 999 F. 3d. at 360 (quoting Déjà vu of Nashville, Inc., 274 F. 3d. at 400)*.

94. The Supreme Court has held:

> "When interpreting a criminal statute, **we do not play the part of a mind reader.** In our seminal rule-of-lenity decision, Chief Justice Marshall **rejected the impulse to speculate regarding a dubious congressional intent** '[p]robability is not a guide which a court, in construing a penal statute, can safely take.' *United States v. Wiltberger*, 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83, 75 S. Ct. 620, 99 L. Ed. 905 (1955). *United States v. Santos*, 553 U.S. 507, 515, 128 S. Ct. 2020, 1701 L.Ed.2d 912 (2008). (Emphasis added)

95. **The rule of lenity**, (*U.S. v. Batchelder*, 99 S. Ct. 1298, 1979) demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

### Plaintiff Sentence Details

1. Plaintiff, Harold Doss, conviction offense date of first-degree murder is March 19, 2012, and the court imposed a life sentence under former T.C.A. § 39-13-204. The trial court imposed the life sentence under T.C.A. § 39-13-204.

2. Former T.C.A. § 39-13-204 and § 40-35-501(i)(1)(2)(a) can be interpreted to read that the person shall serve 100% of the sentence imposed by the court of twenty-five (25) years or 100% of 36 years with a maximum allowable reduction of 15% for sentencing credits earned.

3. In the Plaintiff's case, who is sentenced under T.C.A. § 39-13-204, the statute is vague and unconstitutionally imposes a sentence greater than that required by statute of murder in the first degree at the time of Plaintiff's sentence. This is a violation of the Plaintiff's substantial due process and Equal Protection rights secured under the Fourth Amendment; Eighth Amendment Cruel and Unusual Punishment, and Article I Section 9 Ex Post Facto Clause, of the United States Constitution. The above mentioned statutes are unenforceable.

4. The Defendant originally sentenced the Plaintiff as described in the Sentence Management Services Procedures Manual, page 17:

> "Effective 7/1/95, offenders convicted of violent offenses (committed on or after 7/1/95) and receiving a life sentence (not life without parole) must serve 60 years **before parole eligibility**. The sentence can reduce to no less than 51 years with credits earned."

5. Plaintiff's sentence is imposed under former T.C.A. § 39-13-204. As early as 1998, the courts were aware that former T.C.A. § 39-13-204 and former T.C.A. § 40-35-501(i)(1) were not amended to coincide with each other. (See, *State v. Golden*, No. 02C01-9709-CR-003621 998 WL 518071, at *7-*8 (Tenn. Ct. Crim. App. 1998).

> Unfortunately, Tennessee Code Annotated § 39-13-204 was not amended to reflect this change. It immediately becomes apparent that the **legislature in 1995 overlooked amending** Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501. The statutes presently are in conflict.

6. Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and

repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

## CAUSES OF ACTION
## COUNT 1

**Defendant Phillips' arbitrary interpretation and application of "Tennessee's vague life sentence statutes", as applied to Plaintiff, violates the Plaintiff's constitutional rights of "Substantive Due Process Clause of the Fourteenth Amendment, Eighth Amendment Cruel and Unusual Punishment, Article 1 Section 9 Ex Post Facto Clause, "Equal Protection" rights secured under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983 in unconstitutionally calculating the Plaintiff's life sentences;**

**(Asserted by Plaintiff against Defendant, in her official capacity.)**

1. Plaintiff brings this action arising out of cruel and unusual punishment based on Defendant Phillips' arbitrary interpretation and deliberate indifference in the calculation procedures method in the application of Tennessee's vague life sentence statutes. Defendant is in violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment depriving "Plaintiff" of "life, liberty, or property, without due process of law, and the Eighth Amendment of the United States Constitution," Prohibition of Cruel and Unusual Punishment; U.S. Constitution amendment XIV, § 1.

2. The United States Supreme Court has acknowledged "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

3. Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

4. As set forth in the allegations above, Defendant Phillips' calculation procedures method, due to the arbitrary interpretation of Tennessee's vague life sentence statutes, has failed to apply Plaintiff's life sentence pursuant to statutory and constitutional mandates. Defendant has caused Plaintiff to suffer constitutional violations of Substantive Due Process of the Fourteenth Amendment, Cruel and Unusual Punishment under the Eighth Amendment, Equal Protection rights secured under the Fourteenth Amendment, Section 1, Ex Post Facto rights under Article I, Section 9, Clause 3, of the United States Constitution and 42 U.S.C. § 1983.

5. Plaintiff is entitled to all available relief under the law necessary to make Plaintiff whole, including without limitation:

A. A finding that the relevant sentencing statutes as described herein, as applied to Plaintiff, be found unconstitutionally vague and therefore unenforceable;

B. A finding that Plaintiff's rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and unusual punishment, substantive due process violation, Ex Post Facto violations and Equal Protection violations.

C. Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely and efficiently calculate offender sentences of those similarly situated, sentence of life, to conform to the requirements of the United States Constitution.

D. The Plaintiff's sentence is unenforceable and Plaintiff must be resentenced under the 1989 Sentencing Reform Act *formerly* (g). Resentencing the Plaintiff under the 1989 sentencing Reform Acts is not a favorable judgment and would **"at most"** speed a parole hearing application,

but it would not automatically result in speedier release. See *Hill v. Snyder* 878 F.3d 196 (6th Cir. 2017.) (cumulative cases).

E. Reasonable attorney fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1983; and;

F. All other relief, legal or equitable, that the Court deems just and proper.

## CAUSES OF ACTION
## COUNT 2

**"Tennessee's life sentence statutes, as applied to Plaintiff, are vague" and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Equal Protection of the Law and Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, and violation of Article 1 Section 9, Ex Post Facto clause of the United States Constitution.**

1. Plaintiff brings this action arising out of Tennessee's life sentence statutes and, as applied to Plaintiff, are vague and violates the Plaintiff's Eighth Amendment prohibition of cruel and unusual punishment, Equal Protection of the Law, violation of Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution, and violation of the Ex Post Facto clause of the United States Constitution.

2. The United States Supreme Court has acknowledged "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

3. Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

4. As set forth in the allegations above, Defendant Phillips' calculation procedures method, due to the arbitrary interpretation of Tennessee's vague life sentence statutes, has failed to apply

27

Plaintiff's life sentence pursuant to statutory and constitutional mandates. Defendant has caused Plaintiff to suffer constitutional violations of the "Substantive Due Process" of the Fourteenth Amendment, "Cruel and Unusual Punishment" under the Eighth Amendment, "Equal Protection" rights secured under the Fourteenth Amendment, Section 1, "Ex Post Facto" rights under Article I, Section 9, Clause 3, of the United States Constitution and 42 U.S.C. § 1983.

5. Plaintiff is entitled to all available relief under the law necessary to make Plaintiff whole, including without limitation:

A. A finding that the relevant sentencing statutes as described herein, as applied to Plaintiff, be found unconstitutionally vague and therefore unenforceable;

B. A finding that Plaintiff's rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and unusual punishment, substantive due process violation, Ex Post Facto violations and Equal Protection violations.

C. Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely and efficiently calculate those similarly situated, sentence of life, to conform to the requirements of the United States Constitution.

D. The Plaintiff's sentence is unenforceable and must be resentenced under the 1989 Sentencing Reform Act *formerly* (g). Resentencing the Plaintiff under the 1989 sentencing Reform Acts is not a favorable judgment and would **"at most"** speed a parole hearing application, but it would not automatically result in speedier release. See *Hill v. Snyder* 878 F.3d 196 (6th Cir. 2017.) (cumulative cases).

E. Reasonable attorney fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1983; and;

F. All other relief, legal or equitable, that the Court deems just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

A. Plaintiff prays for this Court to issue an injunction directing the Defendant to cease and desist in the cruel and unusual punishment of Plaintiff and all those similarly situated under the unconstitutional 1995 life sentence Amendment.

B. A finding that the relevant sentencing statutes as described herein to be unconstitutionally vague and therefore unenforceable;

C. A finding that Plaintiff's rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and unusual punishment, substantive due process violation, Ex Post Facto violations and Equal Protection violations.

D. Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies, practices and procedures to timely, efficiently and accurately process the sentence of Plaintiff, and all those similarly situated, in accordance to constitutional mandates. The Plaintiff's sentence must be calculated under § 40-35-501(h) under the 1989 Sentencing Reform Act (formerly 501(g) parole eligible). Resentencing the Plaintiff under the 1989 Sentencing Reform Acts is not a favorable judgment and would **"at most"** speed a parole hearing application, but would not automatically result in speedier release. (Tennessee authorities retained discretion to deny parole.)

E. Award Plaintiff all costs, expenses and reasonable attorneys' fees as permitted by law, including under 42 U.S.C. § 1983; and

F. All other relief, legal or equitable, that the Court deems just and proper.

Date: 20th day of February, 2024

Respectfully submitted,

*Harold Doss Jr*

Harold Doss

#421315

R.M.S.I.
7475 Cockrill Bend Boulevard
Nashville, Tennessee 37209-1048

## DECLARATION OF VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the facts stated within this Complaint under 42 U.S.C. § 1983 for Injunctive Relief are true and correct to the best of my knowledge, information and belief.

Signed this the 20th day of February, 2024.

Respectfully submitted,

*Harold Doss Jr*

Harold Doss

30

**PROOF OF SERVICE**

I hereby certify that a true and exact copy of the foregoing Complaint under 42 U.S.C. §

1983 for Prospective Injunctive Relief has been placed in the prison mailbox and sent by First

Class, U.S. Mail, postage prepaid to:

Amber L. Phillips
Correctional Program Director 2
Rachel Jackson Building, 6th Floor
320 6th Avenue North
Nashville, Tennessee 37243-1465

On this the 20th day of February, 2024.

Respectfully submitted,

*Harold Doss Jr*

Harold Doss

#421315

R.M.S.I.
7475 Cockrill Bend Boulevard
Nashville, Tennessee 37209-1048

Mr. Harold Doss, Jr. #421315
Riverbend Maximum Security Institution
7475 Cockrill Bend Blvd.
Nashville, TN 37209



LEGAL MAIL

RECEIVED

MAR 1 1 2024

U.S. District Court
Middle District of TN



Court Clerk
Fred D. Thompson US Courthouse
719 Church St.
Nashville, TN 37203